UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
423 FLATBUSH L.L.C. and JOHN GRAY,

Plaintiffs,

-against-

JPMORGAN CHASE BANK N.A.,

Defendant.
---------------------------------------------------------------x

**MEMORANDUM AND ORDER**
24-CV-8065 (OEM) (CHK)

ORELIA E. MERCHANT, United States District Judge:

On November 20, 2024, John Gray ("Gray") commenced this action against JPMorgan Chase Bank N.A ("Defendant"), alleging, *inter alia*, breach of contract related to a mortgage executed against real property located in Brooklyn, New York. *See* Complaint for a Civil Case Alleging Breach of Contract (28 U.S.C. § 1332; Diversity of Citizenship), Dkt. 1 ("Complaint" or "Compl."). On October 10, 2025, Gray filed a fourth amended complaint whereby he and 423 Flatbush L.L.C. ("423 Flatbush," together with Gray, "Plaintiffs") assert eight causes of action against Defendant related to the mortgage. *See* Fourth Amended Complaint and Jury Demand, Dkt. 35 ("Fourth Amended Complaint" or "4th Am. Compl.").

Before the Court is Defendant's fully briefed motion to dismiss the Fourth Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). *See* Notice of Motion to Dismiss Plaintiffs' Fourth Amended Complaint, Dkt. 46 ("Motion"); Memorandum of Law in Support of Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss Plaintiffs' Fourth Amended Complaint, Dkt. 46-15 ("Mem."); Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Fourth Amended Complaint, Dkt. 47-8 ("Opposition" or "Opp'n"); Reply Memorandum of

Law in Further Support of Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss Plaintiffs' Fourth Amended Complaint, Dkt. 48 ("Reply").

For the following reasons, Defendant's Motion to dismiss is granted.

## BACKGROUND[1]

### A. The Promissory Note and Mortgage

Gray is an individual residing at 423 Lincoln Place, Brooklyn, New York (the "Property"). 4th Am. Compl. ¶ 5. Although Gray uses the Property as his primary residence, it is also "used as rental apartments within the multifamily building." *Id.* ¶¶ 94-95. Gray is the sole member of 423 Flatbush, a New York State limited liability company whose principal place of business is at the Property. *Id.* ¶¶ 7-8; Affidavit of Plaintiff John Gray in Support of his Opposition to Defendant Chases's Motion to the Dismiss the Fourth Amended Complaint ("Gray Aff."), Exhibit B, Dkt. 47-2 ("423 Flatbush Articles of Organization"); Gray Aff., Exhibit C, Dkt. 47-3 ("Garcia Sale Confirmation").[2]

On January 30, 2015, 423 Flatbush executed an Amended and Restated Promissory Note in favor of Defendant in the amount of $1,700,000. *See* Affidavit of Heather L. Smith in Support

---

[1] Unless otherwise noted, the following facts are drawn from Plaintiffs' Fourth Amended Complaint and are accepted as true for the purpose of ruling on Defendant's Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] When ruling on a motion to dismiss for failure to state claim pursuant to Rule 12(b)(6) or a facial challenge to the Court's subject-matter jurisdiction pursuant to Rule 12(b)(1), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *see Concern for Indep. Living, Inc., v. Town of Southampton*, 826 F. Supp. 3d 343, 355 (E.D.N.Y. 2026). "Where a document is not incorporated by reference, the court may neverless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco*, 622 F.3d at 111 (quoting *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006)). However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Here, the 423 Flatbush Articles of Organization and the Garcia Sale Confirmation are integral to the Fourth Amended Complaint as they indicate that Gray is the sole member of 423 Flatbush, which in turn supports his standing as a guarantor. *See DiFolco*, 622 F.3d at 111. Further, Defendant does not dispute the authenticity or accuracy of the documents. *See Faulkner*, 463 F.3d at 134; Reply at 2-4. Therefore, the Court considers them when ruling on the instant Motion.

of JPMorgan Chase Bank N.A.'s Motion to Dismiss Plaintiffs' Fourth Amended Complaint ("Smith Aff."), Exhibit B, Dkt. 46-11 ("Amended Note"). As security for the Amended Note, 423 Flatbush executed an Amended and Restated Mortgage against the Property in favor Defendant. *See* Smith Aff., Exhibit C, Dkt. 46-12 ("Amended Mortgage"). To further secure the Amended Note, Gray executed a Limited Guaranty in favor of Defendant. *See* Smith Aff., Exhibit E, Dkt. 46-14 ("Guaranty").[3]

The relevant provisions of the Amended Mortgage are as follows:

- **Obligations Secured**: This Security Instrument is given for the purpose of securing . . . [t]he repayment of any and all sums advanced or expenditures made by [Defendant] subsequent to the execution of this Security Instrument for the maintenance or preservation of the Property or advanced or expended by [Defendant] pursuant to any provision of this Security Instrument subsequent to its execution, together with interest thereon. Amended Mortgage ¶¶ 3-3.2.

- **Preservation of Lien**. [423 Flatbush] will preserve and protect the priority of this Security Agreement as a first lien on the Property. If [423 Flatbush] fails to do so, [Defendant] may take any and all actions necessary or appropriate to do so and all sums expended by [Defendant] in so doing shall be treated as part of the obligations secured by this Security instrument . . . . *Id.* ¶ 4.2.

- **Taxes, Assessments, and Other Liens**. [423 Flatbush] will pay prior to delinquency all taxes, assessments, encumbrances, charges, and liens with interest, on the Property or any part thereof, including but not limited to any tax on or measured by rents of the Property, the [Amended Note], this Security Instrument, or any obligation or part thereof secured hereby. *Id.* ¶ 4.9

- **Repayment of Expenditures**. [Defendant] will pay within five (5) days after written demand all amounts secured by this Security Instrument, other than principal of and interest on the [Amended Note], with interest from the date of the expenditure at the rate of interest borne by the [Amended Note] and the repayment thereof shall be secured by the Security Instrument. *Id.* ¶ 4.11

[3] Plaintiffs' Fourth Amended Complaint attaches and references a prior note and mortgage that were amended and superseded by the terms of the Amended Note and Amended Mortgage. *See* 4th Am. Compl., Exhibit 1, Dkt. 35-1 ("Prior Mortgage"); 4th Am. Compl., Exhibit 2, Dkt. 35-2 ("Prior Note"); Amended Note at 1; Amended Mortgage at 1. As Plaintiffs' claims arise from the Amended Note, Amended Mortgage, and Guaranty, they are integral to the Fourth Amended Complaint. *See DiFolco*, 622 F.3d at 111. Further, Plaintiffs do not dispute the authenticity or accuracy of these documents. *See Faulkner*, 463 F.3d at 134; Gray Aff. ¶¶ 14-15, Dkt. 47-1. Therefore, the Court considers them when ruling on the instant Motion.

- **<u>Lender's Right to Perform</u>**. After the occurrence and during the continuance of any Event of Default, [Defendant], but without the obligation so to do and without notice to or demand upon [423 Flatbush] and without releasing [423 Flatbush] from any obligations hereunder, may: make any payments or do any acts required of [423 Flatbush] hereunder in such manner and to such extent as either may deem necessary to protect the security hereof . . . . [Defendant] in making any payment herein, is hereby authorized, in the place and stead of [423 Flatbush], in the case of a payment of taxes, assessments, water rates, sewer rentals and other governmental or municipal charges, fines, impositions or liens asserted against the Property, to make such payment in reliance on any bill, statement or estimate procured from the appropriate public office without inquiry into the accuracy of the bill, statement or estimate or into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof . . . . *Id.* ¶ 5.2.

**B. The Delinquent Water and Sewage Bill**

In 2023, Plaintiffs owed $102,039.36 to the New York City Department of Environmental Protection ("DEP") for the Property's water and sewage bills. 4th Am. Compl ¶ 30. Plaintiffs disputed this amount with the DEP and scheduled a meter reading to resolve the outstanding balance, which was to take place on November 30, 2023. *Id.* ¶¶ 31-33.

From January 30, 2023, to May 31, 2023, a DEP Water Bill Amnesty Program offered New York City ("City") property owners amnesty on accrued interest on overdue water and sewer bills. *Id.* ¶ 34. Also in 2023, the City stopped the sale of liens for real property taxes, water and sewer taxes, and other property-based charges. *Id.* ¶ 37. The City did not resume lien sales until June 3, 2025. *Id.* ¶ 40.

On July 24, 2023, six weeks after the end of lien amnesty, Defendant made a $102,039.36 lien payment to the DEP for the Property's water and sewage bill. *Id.* ¶¶ 41-42. Plaintiffs allege that Defendant did not notify Plaintiffs that it was going to pay the outstanding water and sewer bill, and had it done so, Plaintiffs "would have instructed [Defendant] NOT to pay the bill because [they were] waiting on a water meter reading from the DEP." *Id.* ¶¶ 45-46. Further, Plaintiffs allege that their monthly mortgage payments increased by more than double as a result of

Defendant's payment of the bill, and "[h]ad [Defendant] adhered to the new Lien sale date of June 3, 2025, Plaintiffs would have had a full two years to pay the water and sewage bill." *Id.* ¶¶ 49, 52. Instead, according to Plaintiffs, "[Defendant] paid Plaintiffs' water and sewage bill, and forced a foreclosure on the Plaintiffs' property." *Id.* ¶ 53.

### C. Procedural History

#### 1. The First District Court Action[4]

On August 23, 2024, Gray, appearing *pro se* and on behalf of 423 Flatbush, commenced an action in the United States District for the Eastern District of New York. *See Gray v. Chase Bank*, 24-cv-5919-OEM-LB (E.D.N.Y. 2024) ("First District Court Action"), Dkt. 1. On September 5, 2024, the Court ordered Gray to retain counsel to represent 423 Flatbush by September 30, 2024, noting that a limited liability company must be represented by licensed counsel. *See* First District Court Action, Order, Dkt. 5. Counsel appeared on behalf of 423 Flatbush on September 27, 2024, *see* First District Court Action, Dkt. 9, and the case was voluntarily dismissed on October 9, 2024, *see* First District Court Action, Order Dismissing Case, dated Oct. 9, 2024.

#### 2. The Instant Action

On November 20, 2024, Gray, appearing *pro se*, commenced the instant action individually and behalf of 423 Flatbush. *See* Compl. On December 3, 2024, the Court directed Gray to retain counsel to represent 423 Flatbush by January 6, 2025, noting that a limited liability company must be represented by licensed counsel. *See* Order, Dkt. 5.

---

[4] The Court takes judicial notice of filings in other litigation not for the truth of the matters asserted therein, but rather to establish the fact of such litigation. *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish a fact of such litigation and related filings.'" (quoting *Liberty Mut. Ins. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992))).

Defendant filed a letter motion for a pre-motion conference in anticipation of a motion to dismiss the complaint on December 5, 2024. *See* Defendant's Letter to the Court (Dec. 5, 2024), Dkt. 6, and the Court directed Plaintiffs to file a response to Defendant's letter motion for a premotion conference by January 20, 2025, *see* Order, dated Dec. 19, 2024.

Attorney Elliot Scott Schlissel ("Schlissel") filed a Notice of Appearance on behalf of Gray on December 30, 2024, *see* Notice of Appearance, Dkt. 9, and on February 4, 2025, the Court issued an order directing Schlissel to clarify whether he also represented 423 Flatbush by February 11, 2025, *see* Order, dated Feb. 4, 2025.

On February 19, 2025, due to failing to comply with two orders, the Court ordered Plaintiffs to show cause why the case should not be dismissed for failure to prosecute by February 24, 2025. *See* Order to Show Cause, dated Feb. 19, 2025 ("Order to Show Cause").

Plaintiff failed to respond to the Order to Show Cause, and the Court dismissed the case for failure to prosecute on February 28, 2025. *See* Order Dismissing Case, dated Feb. 28, 2025 ("Order Dismissing Case"). The Clerk of Court entered judgment on March 3, 2025. *See* Judgment, Dkt. 10.

Plaintiff moved to vacate the Order Dismissing Case on May 25, 2025, *see* Motion for Order to Show Cause, Dkt. 12, and after a conference held on May 13, 2025, the Court vacated the Order Dismissing Case and the March 3, 2025, judgment, *see* Order, dated May 13, 2025. The Clerk of Court reopened the case that same day.

On May 30, 2025, Gray, now acting through attorney Ronald Weiss ("Weiss"), filed an amended complaint. *See* Amended Complaint, Dkt. 16 ("First Amended Complaint"). A short time later on May 30, 2025, Gray filed another amended complaint. *See* Amended Complaint, Dkt. 17 ("Second Amended Complaint"). Both the First Amended Complaint and Second

Amended Complaint identified Gray as the sole plaintiff. *See* First Amended Complaint; Second Amended Complaint. On June 2, 2025, without seeking leave, Gray filed another amended complaint whereby he joined 423 Flatbush as a plaintiff. *See* Amended Complaint, Dkt. 18 ("Third Amended Complaint").

Defendant filed a letter motion for a pre-motion conference in anticipation of a motion to dismiss the Third Amended Complaint on June 16, 2025. *See* Defendant's Letter to the Court (June 16, 2025), Dkt. 20. On June 26, 2025, after Plaintiffs failed to respond to the June 16, 2025, letter motion, the Court directed Plaintiffs to respond by July 1, 2025, and also directed Weiss to confirm whether he represents both Gray and 423 Flatbush. *See* Order, dated June 26, 2025. Without substantively responding to Defendant's pre-motion conference letter, Gray wrote to the Court advising that he intended to retain new counsel on July 1, 2025. Gray's Letter to the Court (July 1, 2025), Dkt. 22.

On July 8, 2025, the Court scheduled a pre-motion conference for July 15, 2025. *See* Order, dated July 8, 2025. On July 11, 2025, attorney Anne Donnelly Bush ("Bush") filed a Notice of Appearance on behalf of Plaintiffs, *see* Notice of Appearance, Dkt. 23, and on July 14, 2025, Plaintiffs moved to adjourn the July 15, 2025, pre-motion conference and advised that they intended to file an amended complaint, *see* Plaintiffs' Letter to the Court (July 14, 2025), Dkt. 24. The Court then cancelled the July 15, 2025, pre-motion conference and ordered Plaintiffs to file a motion for leave to file an amended complaint by July 28, 2025. *See* Order, dated July 14, 2025. Plaintiffs filed a motion for leave to file an amended complaint on July 28, 2025, *see* Notice of Motion for Leave to File Amended Complaint, Dkt. 30, and after full briefing, the Court granted the motion and permitted Plaintiffs to file the instant Fourth Amended Complaint, *see* Order, dated

Oct. 9, 2025. Plaintiffs filed the Fourth Amended Complaint on October 10, 2025. *See* 4th Am. Compl.

## LEGAL STANDARDS

### A. Rule 12(b)(1)

Challenges to a plaintiff's standing implicate the Court's subject-matter jurisdiction under Rule 12(b)(1). *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016). Rule 12(b)(1) requires a district court to dismiss an action for lack of subject-matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Green v. Dep't of Educ.*, 16 F.4th 1070, 1075 (2d Cir. 2021) (per curiam) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking federal jurisdiction bears the burden of establishing [standing]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Carter*, 822 F.3d at 56. Where a challenge to a plaintiff's standing is "facial," in other words, "based solely on the allegations of the complaint or the complaint and exhibits attached to it," *Carter*, 822 F.3d at 56, as is the case here, *see* Mem. at 25-27; Reply at 2-4, "the plaintiff has no evidentiary burden" and "[t]he task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue,'" *Carter*, 822 F.3d at 56 (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). The Court accepts as true all material allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Id.* at 57.

### B. Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim for relief pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Hogan*, 738 F.3d at 514. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013).

Determining whether a plausible claim for relief is stated is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distrib. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guar. Corp.*, 712 F.3d at 717 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Iqbal*, 556 U.S. at 678)).

**DISCUSSION**

Plaintiffs assert eight causes of action: (1) breach of contract, 4th Am. Compl. ¶¶ 147-55; (2) violation of the Fair Housing Act ("FHA"), *id.* ¶¶ 156-69; (3) violation of the Equal Credit Opportunity Act of 1974 ("ECOA"), *id.* ¶¶ 160-63; (4) violation of the New York State Human Rights Law ("NYSHRL") for discrimination based upon race and national origin in housing, *id.*

¶¶ 164-67; (5) violation of the New York City Human Rights Law ("NYCHRL") for discrimination based upon race and national origin in housing, *id.* ¶¶ 168-71; (6) intentional infliction of emotional distress, *id.* ¶¶ 172-76; (7) negligent infliction of emotional distress, *id.* ¶¶ 177-80; and (8) breach of the implied covenant of good faith and fair dealing, *id.* ¶¶ 181-85. In addition to moving to dismiss each cause of action for failure to state a claim, Defendant asserts that Gray lacks standing to enforce the terms of the Amended Note and Amended Mortgage. *See generally* Mem. The Court addresses Defendant's standing challenge before turning to each claim.

**A. Gray's Standing**

Defendant contends that Gray, in his capacity as a guarantor, lacks standing to enforce the terms of the Amended Note and Amended Mortgage on behalf of 423 Flatbush. Mem. at 25-27.[5] In response, Plaintiffs argue that Gray has standing because he is the sole member of 423 Flatbush. Opp'n at 6.

Based on the allegations in the Fourth Amended Complaint, the 423 Articles of Organization, and the Garcia Sale Confirmation, Gray has standing. "New York courts have long held that, as a general rule, the guarantor may not assert its principal's claim." *Cinema N. Corp. v. Plaza at Latham Assocs.*, 867 F.2d 135, 139 (2d Cir. 1989); *see also Sterling Fin. Servs. Co. v. Franklin*, 259 F. App'x 367, 369 (2d Cir. 2008) ("As a general rule, guarantors in New York do not have standing to assert affirmative defenses properly belonging to the obligor, the party whose obligations the guarantors have guaranteed.").[6] However, an exception to this general rule exists

[5] As Defendant's argument only pertains to Gray's ability to enforce the terms of the Amended Note and Amended Mortgage, the Court construes the standing challenge to apply only to Plaintiffs' breach of contract claim.

[6] As the parties' Motion papers only address New York law, *see generally* Mem.; Opp'n; Reply, the Court finds that New York law controls through implied consent. *See Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'" (quoting *Tehran-Berkeley Civ. & Env't Eng'rs v. Tippetts-Abbett-McCarthy-Stratton,* 888 F.2d 239, 242 (2d Cir. 1989))).

where the guarantor controls the obligor. *Cinema N.*, 867 F.2d at 139; *Sterling*, 259 F. App'x at 369. In such cases, the obligor's consent to the use of its cause of action by the guarantor is presumed. *See Cinema N.*, 867 F.3d at 139; *Walcutt v. Clevite Corp.*, 191 N.E.2d 894, 897-98 (N.Y. 1963). Here, Gray is the sole member of the obligor, 423 Flatbush. *See* 423 Articles of Organization; Garcia Sale Confirmation. Drawing all reasonable inferences in Plaintiffs' favor, *Carter*, 822 F.3d at 56, Gray therefore controls 423 Flatbush and has standing to enforce the terms of the Amended Note and Amended Mortgage as a guarantor, *see Cinema N.*, 867 F.2d at 139; *Sterling*, 259 F. App'x at 369.

Defendant's arguments to the contrary are unavailing. Defendant asserts that the Amended Note and Amended Mortgage "do not confer any rights or benefits to [Gray]" because the documents "do[] not contain any language specifically providing that [Gray] is an intended third-party beneficiary thereof." Reply at 2-3. Defendant also contends that Gray "has not (and cannot) allege any injuries that are unique to him individually rather than in his capacity as a [member] of [423 Flatbush]." *Id.* at 3. Both of these arguments, however, read requirements into the case law that are not there. The relevant inquiry is whether the guarantor controls the obligor. *See Cinema N.*, 867 F.2d at 139; *Sterling*, 259 F. App'x at 369. As Gray plausibly alleges such control here, the Court denies Defendant's Motion to dismiss for lack of standing.

**B. Breach of Contract Claim**

The Court now turns to Defendant's Motion to dismiss for failure to state claims, beginning with Plaintiffs' claim for breach of contract. Defendant contends that Plaintiffs fail to plead the requisite element of breach. Mem. at 14-16. In response, Plaintiffs argue that they have plausibly alleged breach in Defendant's payment of the water and sewage bill "because there was effectively no second lien [on the Property] in 2023." Opp'n at 8 (emphasis omitted).

Plaintiffs fail to state a claim for breach of contract. To plead a cause of action for breach of contract under New York law, "a plaintiff usually must allege that: (1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages." *34-06 73, LLC v. Seneca Ins.*, 198 N.E.3d 1282, 1287 (N.Y. 2022) (citations omitted).

Here, Plaintiffs fail to plausibly allege that they "performed in accordance the contract." *Id.* Plaintiffs admit that they owed $102,039.36 to the DEP for water and sewage bills. 4th Am. Compl. ¶ 30. Although they disputed the amount, *id.* ¶ 31, their delinquency breached the plain and unambiguous terms of Amended Mortgage,[7] which required them to "pay prior to delinquency all taxes, assessments, encumbrances, charges, and liens with interest on the Property or any part thereof, including but not limited to any tax on or measured by rents of the Property," Amended Mortgage ¶ 4.9.

Plaintiffs also fail to plausibly allege that Defendant "breached its contractual obligations." *34-06 73, LLC*, 198 N.E.3d at 1287. Plaintiffs allege that by paying 423 Flatbush's water and sewage bill, Defendant breached the provisions of the Amended Note and Amended Mortgage. 4th Am. Compl. ¶ 54. However, under the plain and unambiguous terms of Amended Mortgage, Plaintiffs' failure to pay the bill constituted a failure to "preserve and protect the priority of [the] Security Instrument as a first lien on the Property." Amended Mortgage ¶ 4.2. This failure

[7] "At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous. . . . 'Whether or not a writing is ambiguous is a question of law to be resolved by the courts.'" *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015)). "A contract is ambiguous under New York law 'if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Id.* at 156-57 (quoting *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co.*, 773 F.3d 110, 114 (2d Cir. 2014)). By contrast, a contract is unambiguous "if the contract language has a definite and precise meaning . . . and concerning which there is no reasonable basis for a difference of opinion." *Id.* at 157 (quoting *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010)).

permitted Defendant to "take any and all actions necessary or appropriate" to preserve and protect the Amended Mortgage's priority as a first lien, including paying the delinquent bill to avoid a priority lien on the Property. *See id.*; N.Y.C. ADMIN. CODE § 11-301 ("All taxes and all assessments and all sewer rents, sewer surcharges and water rents, and the interest and charges thereon, which may be laid or may have heretofore been laid, upon any real estate now in the city, shall continue to be, until paid, a lien thereon, and s*hall be preferred in payment to all other charges*.") (emphasis added); *see also Knopf v. Esposito*, 17cv5833(DLC), 2021 WL 2138460, at *2 n.5 (S.D.N.Y. May 26, 2021) ("It is well established that unpaid taxes constitute a lien upon the real estate against which they are assessed prior and superior to that of any mortgage." (quoting *McCarthy v. Emma*, 106 N.E.2d 497, 499 (N.Y. 1952)).

Further, pursuant to the terms of the Amended Mortgage, "all sums expended by [Defendant] in [preserving and protecting the Amended Mortgage's priority] shall be treated as part of the obligations secured by this Security Instrument, [and] shall be paid by [Plaintiffs] upon demand by [Defendant] and shall bear interest at the highest rate borne by any of the obligations secured by this Security Instrument." Amended Mortgage ¶ 4.2; *see also id.* ¶¶ 3-3.2 (stating that the Amended Mortgage "is given for the purpose of securing . . . [t]he repayment of any and all sums advanced or expenditures made by [Defendant] subsequent to [its] execution . . . for the maintenance or preservation of the Property or advanced or expended by [Defendant] pursuant to any [of its] provision[s]"). Therefore, as alleged, Defendant's actions complied with the terms of the Amended Mortgage and Plaintiffs fail to state a claim for breach.

Plaintiffs' argument to the contrary does not alter this conclusion. Plaintiffs contend that, because the City had stopped lien sales for water and sewage charges and did not resume them until June 3, 2025, there was effectively no second lien on the Property when Defendant paid the

delinquent bill. *See* Opp'n at 8. Although Plaintiffs preferred that Defendant "adhered to the new Lien sale date of June 3, 2025," which would have given them "a full two years to pay the water and sewage bill," *id.*, Defendant's payment of the bill did not breach the terms of Amended Mortgage. The practical reality that lien sales were not underway does not change that, as alleged, Plaintiffs' failure to pay the bill constituted a failure to "preserve and protect the priority of [the] Security Instrument as first lien on the Property." Amended Mortgage ¶ 4.2; *see* N.Y.C. ADMIN. CODE § 11-301; *Knopf*, 2021 WL 2138460, at *2 n.5. Nor does it change that Plaintiffs themselves failed to perform in accordance with the contract by failing to pay the water and sewage bill in the first place. 4th Am. Compl. ¶ 30; Amended Mortgage ¶ 4.9.

Accordingly, Plaintiffs fail to state a claim for breach of contract and that claim is therefore dismissed.

### C. FHA Claim

#### 1. Coverage

In their second cause of action, Plaintiffs allege that Defendant discriminated against them on the basis of race and national origin in violation of the FHA by selling them a less-favorable commercial mortgage. *See* 4th Am. Compl. ¶¶ 107-25, 156-59. Defendant argues that Plaintiffs' FHA claim fails as a matter of law because the Amended Note and Amended Mortgage were executed for commercial purposes and FHA protections do not extend to commercial loans. Mem. at 16. Plaintiffs contend that their "transaction with [Defendant] to obtain financial assistance for the purchase of a dwelling or residence, for [Gray] and his children to live in," is covered by the FHA. Opp'n at 11-12.

The commercial label of the loan at issue does not preclude coverage under the FHA. The FHA makes it "unlawful for any person or other entity whose business includes engaging in

residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605(a). The FHA defines "residential real estate-related" transactions as "(1) [t]he making or purchasing of loans or providing other financial assistance—(A) for purchasing, constructing, improving, or maintaining a dwelling; or (B) secured by residential real estate," as well as "(2) [t]he selling, brokering, or appraising of residential real property." *Id.* § 3605(b). Although the Second Circuit has yet to address what qualifies as a "real-estate related" transaction, *Germain v. M & T Bank Corp*., 111 F. Supp. 3d 506. 521 (S.D.N.Y. 2015), is instructive. In that case, the plaintiffs alleged "that the discrimination they suffered related to the loans they sought," *id.* at 522, and the defendant argued the loan was a "purely commercial venture" and "because [the plaintiffs] attempted to obtain financing for a property that they did not intend to reside in, but rather rent to other individuals, [p]laintiffs have no cause of action for discrimination under the FHA," *id.* at 521. After analyzing the relevant statutory definitions and the case law from other district and circuit courts, the court in *Germain* agreed with the defendants, holding that when "determining whether a particular building is a dwelling or residence, the focus is on whether the individuals that are subject to discrimination use or intend to use the building as a dwelling or residence." *Id.* at 523; *see Home Quest Mortg. LLC v. Am. Fam. Mut. Ins.*, 340 F. Supp. 2d 1177, 1188 (D. Kan. 2004) (explaining that the plaintiff who "owned the [relevant] building purely as a commercial endeavor," "never intended to inhabit the . . . residential rental unit," and was "not asserting discrimination claims on behalf of anyone who lived in or sought to live in th[e] unit" failed to state a claim under the FHA); *Mitchell v. Citizens Bank*, 3:10-00569, 2011 WL 101688, at *2 (M.D. Tenn. Jan. 11, 2011) (holding that the plaintiff "failed to state a claim under the FHA because he owned the property as

a commercial venture" and he was not alleging that the defendant discriminated against any of the tenants).

Applying that reasoning here, the commercial loan at issue is subject to the FHA's protections because it is "secured by residential real estate." *See* 42 U.S.C. § 3605(b)(1)(B).[8] As alleged by Plaintiffs, the Property, which is secured by the loan, is the primary residence of Gray and his family. 4th Am. Compl. ¶¶ 13, 94, 150. The harm of the alleged discrimination is therefore directed at Plaintiffs as residents of the Property rather than as commercial applicants, thereby invoking the coverage of the FHA. *Cf. Germain*, 111 F. Supp. 3d at 524 (holding that the FHA did not apply because "the discrimination that [the plaintiffs] allege is directed at them as commercial applicants, rather than at the prospective residents of the property). This analysis and outcome "comport[] with the purpose of the FHA, which . . . is 'to provide, within constitutional limitations, for fair housing throughout the United States.'" *Id.* at 523-34 (quoting 42 U.S.C. § 3601).

Defendant's reliance on *Eastern Savings Bank, FSB v. Johnson*, 13-CV-6070 (AMD) (SLT), 2022 WL 877781, at *7 (E.D.N.Y. Jan. 31, 2022), and *Wells Fargo Bank National Association v. 366 Realty LLC*, 17 CV 3570 (SJ) (RER), 2021 WL 9494173, at *4 n.6 (E.D.N.Y. Mar. 16, 2021), for the proposition that FHA protections are categorically unavailable for commercial loans is misplaced, *see* Mem. at 16. *Eastern Savings Bank* is a mortgage foreclosure action that cites *Germain* for the broad proposition that "[c]ourts have . . . 'rejected the notion' that a party 'may state a claim under the FHA for discrimination based on a commercial transaction.'"

[8] Although Plaintiffs argue that 42 U.S.C. § 3605(b)(1)(A) is the applicable provision because Plaintiffs transacted "with [Defendant] to obtain financial assistance for the purchase of a dwelling or residence, for [Gray] and his children to live in," Opp'n at 11-12, the Fourth Amended Complaint does not that allege the loan was made "for purchasing, constructing, improving, repairing, or maintaining a dwelling," 42 U.S.C. § 3605(b)(1)(A). Rather, the Fourth Amended Complaint alleges that the loan transaction was "secured by residential real estate." 42 U.S.C. § 3605(b)(1)(B); *see* 4th Am. Compl. ¶¶ 11-13.

2022 WL 877181 at *7 (quoting *Germain*, 111 F. Supp. 3d at 522 (collecting cases)). While *Germain* does cite several cases that reject the FHA's application to a commercial loan and *Germain* itself rejects such an application, *Eastern Savings Bank* does not account for *Germain*'s analysis in reaching that conclusion, specifically its emphasis on how the plaintiffs did not allege that they intended to use the property at issue as a residence for themselves. *See id.*; *Germain*, 111 F. Supp. 3d at 521-24. That fact is key to *Germain*'s holding and is the distinguishing fact here. As for *Wells Fargo*, that case is a mortgage foreclosure action that does not even discuss the FHA; rather, it discusses how a commercial loan is not subject to statutory notice of default protection. *See* 2021 WL 9494173, at *4 n.6.

Accordingly, Plaintiffs have plausibly alleged that the transaction at issue is covered by the FHA.

**2. Statute of Limitations**

Notwithstanding whether the FHA covers the commercial loan at issue, Defendant contends that Plaintiffs' FHA claim is time-barred. Mem. at 17-18. Plaintiffs respond that their FHA claim is timely because it accrued when Defendant paid Plaintiffs' delinquent water and sewage bill and because Defendant's conduct is an ongoing policy of discrimination. Opp'n at 13-14.

Plaintiffs' FHA claim is time-barred. The statute of limitations for FHA claims is two years from the "occurrence or termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). "Claims under the FHA, like other federal causes of action, accrue when a 'plaintiff knows or has reason to know of the injury that is the basis of the action.'" *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 134, 140 (2d Cir. 2025) (quoting *Leon v. Murphy*, 988 F.2d 303, 309 (2d Cir. 1993)). Here, the complained-of housing practice is Defendant's sale of a

discriminatory mortgage, 4th Am. Compl. ¶¶ 94-125, so the FHA claim began to accrue once Plaintiffs knew or had reason to know that the mortgage was discriminatory, *see Saint-Jean*, 129 F.4th at 140-41. Plaintiffs knew or had reason to know of the discriminatory terms of their mortgage as early as 2020, when Defendant allegedly refused to refinance Plaintiffs' loan and "there was a disparity in [Defendant's] treatment of Plaintiffs and [their] Caucasian neighbors." 4th Am. Compl. ¶¶ 120-21. As Plaintiffs commenced this action on November 20, 2024, *see* Compl., Plaintiffs' FHA claim is barred by the two-year statute of limitations, *see* 42 U.S.C. § 3613(a)(1)(A); *Saint-Jean*, 129 F.4th at 140.

To the extent Plaintiffs argue that their FHA claim is based upon Defendant's payment of the delinquent water and sewage bill on July 24, 2024, Opp'n at 13, that assertion is inconsistent with their position when arguing in favor of the FHA's coverage, *id.* at 8-12 (arguing that the relevant "real estate-related" transaction protected by the FHA is the commercial loan sold by Defendants). Further, as outlined in the Fourth Amended Complaint, Defendant's sale of a less-favorable mortgage is the basis of the FHA claim. 4th Am. Compl. ¶¶ 94-125.[9]

To the extent Plaintiffs argue that the FHA claim accrued upon Defendant's payment of the delinquent water and sewage bill as the last asserted occurrence of a discriminatory policy, the Court also rejects that argument. "The 'continuing violation' doctrine applies when a plaintiff challenges 'not just one incident of conduct violative of the [FHA], but an unlawful practice that

---

[9] Although the Fourth Amended Complaint states that "Plaintiffs['] [FHA] claim lies within the 2 year statute of limitations, because [Defendant] made a $102,039.36 payment to the DEP on or about July 24, 2023, and Plaintiffs filed suit on November 20, 2024," 4th Am. Compl. ¶ 92, the Court is not required to accept that legal conclusion as true, *see Iqbal*, 556 U.S. at 678; *Saunders v. Senkowski*, 587 F.3d 543, 547 (2d Cir. 2009) ("The determination of whether a limitations period has expired, based on undisputed facts, is a question of law.").

Further, even if the Court were to consider Defendant's payment of the water and sewage and bill a discrete discriminatory act subject to FHA protection, Plaintiffs fail "to provide facts that could plausibly support even a minimal inference of discriminatory motivation" in regard to that conduct. *Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (requiring a plaintiff to "sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation" at the pleading stage (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015))); *see generally* 4th Am. Compl.

continues into the limitations period.'" *Shelter Inc. Realty v. City of New York*, 01-CV-7015 (DGT), 2007 WL 29380, at *12 (E.D.N.Y. Jan. 4, 2007) (quoting *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380-81, (1982)). For it to apply, a plaintiff "must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)). "Where it applies, the doctrine delays 'the commencement of the statute of limitations period . . . until the last discriminatory act in furtherance of' the alleged discriminatory policy." *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 292 (S.D.N.Y. 2011) (quoting *Shomo*, 579 F.3d at 181). However, the "continuing violation doctrine 'is heavily disfavored in the Second Circuit' and courts have been 'loath' to apply it absent a showing of 'compelling circumstances.'" *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (first quoting *Stephens v. Hofstra Univ. Sch. of L.*, 01-Cv-5388(DRH)(MLO), 2005 WL 1505601, at *4 (E.D.N.Y. June 24, 2005); and then quoting *Falinski v. Kuntz*, 38 F. Supp. 2d 250, 257 (S.D.N.Y. 1999)). Reflecting this disfavor, "courts have held the continuing violation theory does not apply where a plaintiff was on notice of what [they] believed was discrimination but failed to act in preservation of [their] rights in spite of [that] knowledge." *Newkirk v. Douglas Elliman, Inc.*, 23 Civ. 7040 (VM), 2024 WL 5089160, at *7 (S.D.N.Y. Dec. 12, 2024) (quoting *Melton v. Malcolm Shabazz*, *L.P.*, 18 CV 08111, 2021 WL 535661, at *4 (S.D.N.Y. Feb. 12, 2021)).

Here, Plaintiffs fail to allege the existence of an ongoing policy of discrimination by Defendant. *See generally* 4th Am Compl. Further, as discussed above, the Fourth Amended Complaint indicates that Plaintiffs were on notice of the allegedly discriminatory terms of the mortgage as early as 2020. *See id.* ¶¶ 107-25. Therefore, even assuming that the payment of the

water and sewage bill constituted a discriminatory act in furtherance of a discriminatory policy, Plaintiffs were on notice of a potential FHA claim as early as 2020 but failed to commence the instant action until four years later. *See* Compl. The continuing violation theory does not apply in these circumstances. *See, e.g.*, *Liboy v. Russ*, 22 Civ. 10334 (VM), 2023 WL 6386889, at *7, *10 (S.D.N.Y. Sep. 29, 2023) (finding "no compelling circumstance that would warrant applying the continuing violation doctrine" because the plaintiff "was on notice of his injury the moment he learned he was removed from the public housing transfer waitlist"); *see also Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (noting that a claim "accrues even though the full extent of the injury is not then known or predictable" (quoting *Wallace v. Kato*, 549 U.S. 384, 392 (2007))).

Accordingly, Plaintiffs' FHA claim is dismissed as untimely.

**D. ECOA Claim**

In their third cause action, Plaintiffs assert that Defendant engaged in predatory lending practices in violation of the ECOA. 4th Am. Compl. ¶¶ 160-63. Defendant contends that Plaintiffs fail to plausibly allege a violation of the ECOA because Defendant did not deny them credit, and that Plaintiffs' ECOA claim is time-barred. Mem. at 19. In response, Plaintiffs argue that an ECOA claim applies where a defendant "set[s] the terms of a [plaintiff's] credit in a way that was unfavorable . . . simply because of [the plaintiff's] race and national origin." Opp'n at 15.

Plaintiffs fail to state a claim under the ECOA. The ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction" on the basis "of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). "The term 'credit transaction' has been defined as 'every aspect of an applicant's dealings with a creditor regarding an application for credit.'" *Dorce v. Toyota Fin. Servs.*, 19-CV-6008 (LDH) (RER), 2020 WL 6746838, at *3 (E.D.N.Y. Nov. 17, 2020) (quoting *Shaumyan v.*

*Sidetex Co.*, 900 F.2d 16, 18 (2d Cir. 1990)). Under the ECOA, a plaintiff "may bring suit for acts motivated by discriminatory intent or for policies that have a discriminatory impact." *Germain*, 111 F. Supp. 3d at 525. To establish a prima facie case of discrimination under a disparate treatment theory, "a plaintiff must demonstrate that: '(1) he was a member of a protected class, (2) he applied for credit from the defendant, (3) he was qualified for credit but the defendant denied his credit application, and (4) the defendant continued to engage in the type of transaction in question with other parties with similar qualifications." *Sarakhman v. Sumitomo Mitsui Fin. & Leasing Co.*, 24-CV-5817 (JGLC), 2025 WL 2494288, at *3 (S.D.N.Y. Aug. 29, 2025) (quoting *Germain*, 111 F. Supp. 3d at 526). "To establish a prima facie case under a disparate impact theory, a plaintiff must identify a specific policy or practice which the defendant has used to discriminate and must also demonstrate with statistical evidence that the practice or policy has an adverse effect on the protected group." *Henry v. Flagstar Bank, FSB*, 16-CV-1504 (JMA) (AKT), 2017 WL 11886155, at *3 (E.D.N.Y. Aug. 28, 2017) (quoting *Powell v. Am. Gen. Fin., Inc.*, 310 F. Supp. 2d 481, 487 (N.D.N.Y. 2004)).

Here, Plaintiffs fail to plead the third element of an ECOA disparate treatment claim which requires denial of Plaintiffs' credit application. *See Germain*, 111 F. Supp. 3d at 526. Rather, Plaintiffs allege that Defendant extended credit to them. *See* 4th Am. Compl. ¶ 11; Amended Note. This is fatal to their disparate treatment claim. *See Sarakhman*, 2025 WL 2494288, at *4-5 (dismissing an ECOA disparate treatment claim where the plaintiff was not denied a loan); *Henry*, 2017 WL 11886155, at *4 (same); *Masudi v. Ford Motor Credit Co.*, 07-CV-1082 (CBA)(LB), 2008 WL 2944643, at *4 (E.D.N.Y. July 31, 2008) ("The Court need not address [ECOA] disparate treatment, as plaintiffs were not denied the loan here."). Plaintiffs also fail to plead ECOA disparate impact, as they do not articulate a specific policy to support such a claim. *See* 4th Am.

Compl. ¶¶ 77-84; *Powell*, 310 F. Supp. 2d at 487-88 ("Although a motion for dismissal under 12(b)(6) tests only the adequacy of a plaintiff's complaint, Defendants are correct in their assertion that Plaintiff alleges no specific policy to support her disparate impact claim." (citing *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 91 (2d Cir. 2000))); *Henry*, 2017 WL 11886155, at *4 ("With regard to disparate impact, plaintiffs fail to state a claim as they fail to articulate any . . . policy or practice.").

Although Plaintiffs argue that an ECOA disparate treatment claim applies where a defendant "set[s] the terms of a [plaintiff's] credit in a way that was unfavorable . . . simply because of [the plaintiff's] race and national origin," Opp'n at 15, Plaintiffs cite no case law to support this proposition. While the Court is aware of one case that states that "protection under the [ECOA] is not limited to claims concerning the wholesale denial of credit," such that a plaintiff "can state a claim under the ECOA where she alleges that she was 'discriminated against in the terms of [her] credit[,]', including the terms of loans," *Dorce*, 2020 WL 6746838, at *3 (alteration in original) (quoting *In re Johnson*, 09-49420, 2014 WL 4197001, at *19 (Bankr. E.D.N.Y. Aug. 22, 2014)), that holding is against the weight of the case law, *see Sarakhman*, 2025 WL 2494288, at *4-5; *Henry*, 2017 WL 11886155, at *4; *Masudi*, 2008 WL 2944643, at *4; *see also Kwiatkowski v. Polish & Slavic Fed. Credit Union*, 11-CV-3947, 2011 WL 6225390, at *3 (E.D.N.Y. Dec. 12, 2011) (stating that for an ECOA claim to survive motion to dismiss, plaintiff must allege facts to enable "the reasonable inference that [defendant] *denied* [plaintiff's] credit application[] . . . because of, and not simply in spite of, his national origin." (emphasis added)), *aff'd*, 511 F. App'x 117 (2d. Cir. 2013).

Accordingly, Plaintiffs fail to state a claim under the ECOA and that claim is dismissed.

**E. NYSHRL and NYCHRL Claims**

In their fourth and fifth causes of action, Plaintiffs allege housing discrimination in violation of the NYSHRL and NYCHRL, respectively. *See* 4th Am. Compl. ¶¶ 164-71. Defendant contends that, like Plaintiffs' FHA claim, Plaintiffs' NYSHRL and NYCHRL claims are time-barred. Mem. at 20-21. In response, Plaintiffs assert that Plaintiffs' claims lie within the statute of limitations under the continuing violation doctrine. Opp'n at 17-19.

Plaintiffs' NYSHRL and NYCHRL claims are time-barred. Claims "under the NYSHRL and NYCHRL are time-barred unless filed within three of years of the alleged discriminatory acts." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007); *see* N.Y. C.P.L.R. § 214(2); N.Y.C. ADMIN. CODE § 8-502(d). NYSHRL and NYCHRL discrimination claims begin to run from the time of the discriminatory act. *See Delaney v. Farley*, 623 F. App'x 14, 16 (2d Cir. 2015). Here, as discussed above, Plaintiffs allege that Defendant discriminated against them in setting the terms of their mortgage. 4th Am. Compl. ¶¶ 94-125. The time of the alleged discriminatory act is therefore the origination of the Amended Note and Amended Mortgage on January 30, 2015. *See* Amended Note; Amended Mortgage. As Plaintiffs commenced this action on November 20, 2024, *see* Compl., Plaintiffs' NYSHRL and NYCHRL claims are barred by the three-year statute of limitations, *see* N.Y. C.P.L.R. § 214(2); N.Y.C. ADMIN. CODE § 8-502(d).

Plaintiffs' continuing violation theory is unavailing. The continuing violation doctrine as applied to NYSHRL and NYCHRL claims "is coterminous with the scope of the continuing violation doctrine that applies to federal civil rights claims." *Lovallo v. N.Y.C. Dep't of Educ.*, 23-cv-834 (MKV), 2024 WL 1329793, at *9 n.9 (E.D.NY. Mar. 27, 2024) (quoting *Cruz v. City of New York*, 21-CV-1999, 2021 WL 5605139, at *5 (S.D.N.Y. Nov. 30, 2021)). As discussed above with regard to Plaintiffs' FHA claim, Plaintiffs fail to allege the existence of an ongoing policy of

discrimination by Defendant, and for that reason fail to allege a continuing violation under the NYSHRL or NYCHRL. *See Lavallo*, 2024 WL 1329793, at *9 n.9; *see generally* 4th Am. Compl.

Accordingly, Plaintiffs' NYSHRL and NYCHRL claims are dismissed as untimely.

**F. Intentional Infliction of Emotional Distress Claim**

In their sixth cause of action, Plaintiffs allege that Defendant engaged in intentional infliction of emotional distress ("IIED"). 4th Am. Compl. ¶¶ 172-76. Defendant argues that Plaintiffs fail to plead the requisite "extreme and outrageous" conduct. Mem. at 22. In response, Plaintiffs argue that Defendant's payment of the water and sewage bill during the DEP's lien amnesty constitutes "extreme and outrageous" conduct. Opp'n at 19-20.

Plaintiffs fail to state a claim for IIED. To state a claim for IIED under New York law, a plaintiff must plausibly allege that the defendant exhibited "'(1) extreme and outrageous conduct' with the '(2) intent to cause severe emotional distress,' that there was '(3) a causal connection between the conduct and the injury,' and that '(4) severe emotional distress' resulted." *Rentas v. Ruffin*, 816 F.3d 214, 227 (2d Cir. 2016) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996)). As noted by the New York Court of Appeals, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702-03 (N.Y. 1993) (quoting *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983); *compare Werner v. Selence Fin., LLC*, 17-cv-06514 (NSR), 2019 WL 1316465, at *11 (S.D.N.Y. Mar. 22, 2019) (finding that the plaintiff failed to state a claim for IIED where the defendant "threatened her with foreclosure on her home and reported [her] to credit reporting agencies," noting that such "conduct is hardly outrageous"), *and De Oliveira v. Cairo-Durham Cent. Sch. Dist.*, 1:11-CV-393 (NAM/RFT), 2012 WL

12887987, at *1, *9 (N.D.N.Y. Feb. 28, 2012) (finding that the plaintiff teacher failed to state a claim for IIED when she "claim[ed] that she was wrongfully laid off . . . due to taking an approved leave of absence to care for her newborn baby"), *with Rich v. Fox News Network LLC*, 939 F.3d 112, 122-23 (2d. Cir 2019) (finding that the plaintiffs plausibly alleged extreme and outrageous conduct through a "campaign of emotional torture").

Here, the conduct alleged is far from extreme and outrageous. As discussed above, Defendant's payment of the delinquent water and sewage bill was permitted by the express terms of the Amended Mortgage. *See* Amended Mortgage ¶ 4.2. Even if the payment of the water and sewage was improper under the terms of Amended Mortgage, Defendant's actions do not rise to the level of "utterly intolerable in a civilized community." *Howell*, 612 N.E.2d at 702-03 (N.Y. 1993) (quoting *Murphy*, 448 N.E.2d at 90). To the extent Plaintiffs argue that Defendant's payment of the water and sewage bill during a period of lien amnesty renders that conduct extreme and outrageous, Opp'n at 19, the factual basis of that argument is belied by their own pleadings. As alleged in the Fourth Amended Complaint, lien amnesty was in effect for overdue water and sewage charges from January 30, 2023, to May 31, 2023, 4th Am. Compl. ¶ 34, and Plaintiff alleges that Defendant paid the bill on July 24, 2023, six weeks after the end of lien amnesty. *Id.* ¶¶ 41-42. Therefore, Plaintiffs' argument that Defendant paid the bill during the amnesty period contradicts their own pleadings. Regardless, Defendant's payment of the water and sewage bill is a far cry from a "campaign of emotional torture" that may constitute extreme and outrageous conduct. *Rich*, 939 F.3d at 123.

Accordingly, Plaintiff fails to plausibly allege IIED and that claim is therefore dismissed.

**G. Negligent Infliction of Emotional of Distress Claim**

In their seventh cause of action, Plaintiffs allege that Defendant engaged in negligent infliction of emotional distress ("NIED"). 4th Am. Compl. ¶¶ 177-80. Defendant argues that Plaintiffs fail to state a claim for NIED because they do not allege that they were endangered or feared for their safety. Mem. at 22-23. Plaintiffs do not address this issue in their opposition but argue that Plaintiffs have pleaded the requisite elements of NIED. *See* Opp'n at 20-21.

Plaintiffs fail to state a claim for NIED. To state a claim for negligent infliction of emotional distress under New York law, a plaintiff must assert that they "suffer[ed] an emotional injury from defendant's breach of a duty which unreasonably endangered [their] own physical safety." *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996); *see also Johnson v N.Y.C. Bd. of Educ.*, 704 N.Y.S.2d 281, 283 (2d Dep't 2000) ("Although physical injury is no longer a necessary element of a cause of action for [NIED], such a cause of action generally must be premised on conduct that unreasonably endangers the plaintiff's physical safety or causes the plaintiff to fear for his or her physical safety."). Here, Plaintiffs do not allege that their physical safety was endangered, nor do they allege that they feared for their physical safety. *See generally* 4th Am. Compl. Further, notwithstanding the lack of allegations regarding danger or fear for physical safety, Defendant's intentional act of paying the water and sewage bill cannot the form the basis of an NIED claim. *See Lynch v. Roman Cath. Diocese of Brooklyn*, 822 F. Supp. 3d 340, 371 (E.D.N.Y. 2026) ("[I]ntentional acts cannot form the basis of negligent infliction of emotional distress claims.").

Accordingly, Plaintiffs fail to state a claim for NIED and that claim is therefore dismissed.

**H. Breach of the Implied Covenant of Good Faith and Fair Dealing Claim**

In their eighth cause of action, Plaintiffs allege that Defendant breached the implied covenant of good faith and fair dealing. 4th Am. Compl. ¶¶ 181-85. Defendant contends that this claim is impermissibly duplicative of Plaintiffs' breach of contract claim. Mem. at 24-25. Plaintiffs do not address the duplicative pleadings argument in their opposition but assert that Defendant "[has] not acted honestly and fairly within this contract." Opp'n at 21.

Plaintiffs' breach of the implied covenant claim is impermissibly duplicative of their breach of contract claim. In New York, a separate cause of action for breach of the implied covenant is not recognized "when a breach of contract claim, based upon the same facts, is also pled." *Harris v Provident Life & Accident Ins.*, 310 F.3d 73, 81 (2d Cir. 2002); *see also L-7 Designs, Inc. v Old Navy, LLC*, 647 F.3d 419, 434 n.17 (2d Cir. 2011) (holding that a cause of action for breach of the implied covenant of good faith and fair dealing should have been dismissed as duplicative). Here, the facts underlying the claim for breach of the implied covenant of good faith and fair dealing are the same facts underlying Plaintiffs' breach of contract claim. *See* 4th Am. Compl. ¶ 181 (realleging the allegations set forth regarding the previous claims). Plaintiffs do not even attempt to distinguish the claims in their Opposition. *See* Opp'n at 21.

Accordingly, Plaintiffs' breach of the implied covenant of good faith and fair dealing claim is dismissed as duplicative of their breach of contract claim.

**I. Leave to Amend**

Plaintiffs request that the Court grant leave to replead in the event any causes of action are dismissed for insufficiency. Opp'n at 17. Leave to amend "may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun*

*& Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Amending the FHA, NYSHRL, and NYCHRL claims would be futile as those claims are time-barred. *See Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000). As for the other claims, Plaintiffs have already amended the Complaint three times and the record indicates that further amendment would not survive dismissal. *See Hayden v. County of Nassau*, 180 F.3d 42, 53-54 (2d Cir. 1999). Accordingly, Plaintiffs' request for leave to amend is denied.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to dismiss is granted, and Plaintiffs' Fourth Amended Complaint is hereby dismissed. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

*/s/*
ORELIA E. MERCHANT
United States District Judge

August 27, 2026
Brooklyn, New York